# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **BRANDON MORRIS** | **CIVIL ACTION NO. 19-0266** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **GRAPHIC PACKAGING INTERNATIONAL, LLC** | **MAG. JUDGE KAREN L. HAYES** |

## RULING

This case arises out of an alleged injury to Plaintiff Brandon Morris ("Morris") while he was working at Graphic Packaging International, Inc.'s ("GPI") facility in West Monroe, Louisiana. Pending before the Court is a Motion for Summary Judgment [Doc. No. 17] filed by Defendant GPI. Morris filed an opposition [Doc. No. 20] which was joined by Intervenor Zurich American Insurance Co. ("Zurich") [Doc. Nos. 23 & 25]. GPI filed a reply. [Doc. No. 24].

Morris has also filed a Motion for Partial Summary Judgment [Doc. No. 21].

For the following reasons, GPI's Motion for Summary Judgment is GRANTED, and Morris' Motion for Partial Summary Judgment is DENIED.

### I.     FACTS

On January 2, 2018, GPI, a paper manufacturer, and M.L. Smith, Jr., L.L.C. ("ML Smith"), entered into a written contract ("Purchase Order") for the demolition and rebuild of the evaporator area black liquor reclaim tank [Doc. No. 17-2, Affidavit of Peggy Gross ("Gross Aff."), ¶¶ 3-5 & Exh. A]. Although the Purchase Order identifies the vendor as M.L. Smith, Jr., Inc., a prior entity of ML Smith, the limited liability company ML Smith is the entity to which the Purchase Order was directed, which undertook to perform under the Purchase Order, and which was paid by GPI. *See* [Doc. No. 17-2, Gross Aff., ¶¶ 5-6, Exhs. A & B].

The Purchase Order [Doc. No. 17-2, Exh. A] provided that "[t]he clauses printed on the attachment hereof and any supplemental conditions attached hereto are essential terms of this order." Further, in pertinent part, the Purchase Order's General Terms and Conditions ("Terms") state:

> Acknowledgement, shipment or performance of any part of this Purchase Order will constitute acceptance by [ML Smith] of all Terms and Conditions hereof, including all documents incorporated herein by reference, without reservation, and shall constitute the entire agreement between the parties superseding all prior agreements relating to the subject matter hereof.
>
> …
>
> SECTION 9: INSURANCE:
>
> A. MINIMUM GENERAL REQUIREMENTS. Unless agreed to otherwise in writing by [GPI], at a minimum, [ML Smith] and all of its subcontractors, vendors and/or consultants shall produce and maintain the following insurance:
>
> (i) Worker's Compensation- statutory limits and Employer's Liability- $500,000 per occurrence.
> …
>
> SECTION 13: STATUTORY EMPLOYMENT: If services are to be performed at [GPI's] facilities in the state of Louisiana, it is agreed that pursuant the provisions of the Louisiana Revised Statutes 23:1061(A)(3), that it is the intent and agreement of the parties hereto that the relationship of the [GPI] to the direct employees and the statutory employees of [ML Smith] (contractor) be that of a statutory employer.
>
> …

[Doc. No. 17-2, Exh. A,].

Morris was employed by ML Smith. On February 2, 2018, Morris was assembling a new black liquor reclaim tank. The black liquor reclaim tank is a part of the continuous process whereby black liquor is recycled by the kraft pulping recovery process in order to recover chemicals for future use, lower environmental effluent amounts, and produce steam and power for the plant process. Large amounts of black liquor are produced by the pulp making process on a

daily basis, and the tanks are necessary to provide temporary storage for the material as it is being recycled into its separate constituents for use in the pulp making process or for generation of pulping chemicals, steam, and power.[1] The black liquor reclaim tank is a necessary part of the pulp making and recovery process, essential to the kraft pulp process, and necessary for the production of GPI's paperboard products.

In the area where Morris was working, there was approximately two (2) inches of brown or black fluid on the ground. Morris' supervisor, Britt Cook ("Cook"), asked the GPI representative to have a scaffold built around the tank to prevent the ML Smith crew from having contact with the fluid.

GPI had the scaffold built, but, according to Morris, it was too tall to allow him to weld the fittings. As a result, he claims that he stepped into the fluid and sustained chemical burns on both of his feet. He further contends that there was no foot wash station or other safety measures in place to treat chemical exposure incidents.

ML Smith had previously purchased workers' compensation insurance from Intervenor Zurich, bearing number WC-106590-01. [Doc. No. 14, ¶ 2]. At the time of Morris's accident, the insurance policy was in effect. *Id.* at ¶ 4. Morris has received benefits under the policy.

On January 30, 2019, Morris filed suit against GPI in the Fourth Judicial District Court, Ouachita Parish, Louisiana. He claims that GPI should be held liable for negligent hiring and supervision; failure to train employees; and failure to monitor, evaluate, amend, "and/or sanction unsafe and/or hazardous policies and procedures conducted on the premises." [Doc. No. 1-2, ¶ 10]. Alternatively, Morris contends that GPI is liable to him for creating a condition or allowing

---

[1] According to Kenneth Robert Meissner, Manufacturing Manager for GPI, "the continuous kraft pulping process at GPI's West Monroe paper mill produces approximately 2,100 tons (4,200,00 pounds) per day of black liquor." [Doc. No. 17-3, ¶ 7].

a condition to exist that caused him harm. Additionally, Morris contends that GPI is liable for failing to provide safety measures to alleviate or treat the type of injury he received.

On March 1, 2019, GPI removed the case to this Court based on diversity jurisdiction.

On September 10, 2019, GPI filed the instant Motion for Summary Judgment [Doc. No. 17]. Morris filed an opposition memorandum [Doc. No. 20], and GPI filed a reply memorandum [Doc. No. 24].

This motion is now ripe.

## II. LAW AND ANALYSIS

### A. Standard of Review for Summary Judgment

Summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

In a bench trial, "a district court has somewhat greater discretion to consider what weight it will accord the evidence." *In re Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991). A court "has the limited discretion to decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result." *Id.*

### B. Tort Immunity

In this case, GPI asserts, pursuant to its contract with ML Smith and Louisiana Revised Statute § 23:1061(A)(3), that it is immune from Morris's tort claim—and Zurich's derivative claim--because it was Morris's statutory employer. Accordingly, GPI asserts that the Louisiana Workers' Compensation Law, LA. REV. STAT. § 23:1020.1, *et seq.*, provides the exclusive remedy for Morris' injuries.

Morris opposes GPI's motion, arguing that GPI has failed to prove that it was Morris' statutory employer.

"Except for intentional acts, workers' compensation is the exclusive remedy for work-related injuries and illnesses." *Dugan v. Waste Mgmt., Inc.*, 45-407-CA (La. App. 2 Cir. 6/23/10); 41 So.3d 1263, 1266 (citing LA. REV. STAT. § 23:1032). The exclusive remedy provision of the workers' compensation statute precludes an employee from filing a lawsuit for damages against "his employer[] or any principal." LA. REV. STAT. § 23:1032(A). A "principal" is "any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof." *Id.* "[W]ork shall be considered part of the principal's trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services." *Id.* "In some instances, an employer may be deemed the statutory employer of a worker that it does not directly employ" and

5

is therefore immune from tort liability pursuant to LA. REV. STAT. § 23:1061(A). *Dugan*, 41 So.3d at 1266.

A statutory employment relationship does not exist "unless there is a written contract between the principal and a contractor. . . which recognizes the principal as a statutory employer." LA. REV. STAT. § 23:1061(A)(3). The statutory employee must be hired to perform services that are part of the principal's business, and his injury must occur during the course and scope of his employment, as defined by the agreement. *See* LA. REV. STAT. §§ 23:1061(A)(1) & (A)(2). If a "contract recognizes a statutory employer, [then] a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees" shall exist. LA. REV. STAT. § 23:1061(A)(3). "This presumption may be overcome only by showing that the work is not an *integral part of or essential to the ability of the principal* to generate that individual principal's goods, products, or service." *Id.* (emphasis added). In other words, a statutory employer/employee relationship exists when a principal hires a contractor, in conformance with §23:1061, to perform services that are a part of the principal's business and a written contract exists between the principal and contractor that recognizes the principal as a statutory employer.

In prior decisions, this Court has acknowledged that Section 13 of GPI's Terms recognizes GPI as a statutory employer of its contractors' direct employees, and the language of that section remains unchanged. *See Pettiford v. Graphic Packaging Int'l, Inc.*, Civil Action No. 12-2883, 2013 WL 5303640 (W.D. La. Sept. 20, 2013); *Phillips v. Graphic Packaging, Int'l, Inc.*, Civil Action No. 12-2850, 2013 WL 5375883 (W.D. La. Sept. 24, 2013); *Nielsen v. Graphic Packaging Int'l, Inc.*, Civil Action No. 09-1757, 2011 WL 2462496 (W.D. La. June 17, 2011) *aff'd,* 469 F. App'x 305 (5th Cir. 2012) (finding that identical language in a GPI Purchase Order was sufficient

to recognize a statutory employment relationship); *see also Gilbreath v. Averitt Express, Inc.*, Civil Action No. 09-1922, 2011 WL 121892 (W.D. La. Jan. 13, 2011) (same).

In its Motion for Summary Judgment, GPI points to evidence to support its contention that it is immune from the claims in the instant case because it was Morris's statutory employer. GPI presents undisputed facts that it had a contract (the Purchase Order) with ML Smith to rebuild the black liquor reclaim tank, that Morris was within the course and scope of his employment with ML Smith on the black liquor reclaim tank project at the time of the accident, the Purchase Order recognized GPI as the statutory employer of ML Smith's employees who performed at GPI's facility, and the black liquor reclaim tank, which ML Smith was rebuilding, "is a necessary part of the pulp making and recovery process which is essential to the kraft pulp process and necessary for the production of GPI's paperboard products." [Doc. No. 17-1].

Morris opposes GPI's Motion for Summary Judgment, contending that the unsigned Purchase Order cannot qualify as a written contract under LA. REV. STAT. § 23:1061, and, alternatively, there are genuine issues of material fact whether, at the time of his injury, Morris was performing work that was an integral part of or essential to the ability of GPI to generate its goods, products, or services.

**1. The Unsigned Purchase Order**

Although it is undisputed that the Purchase Order between GPI and ML Smith was unsigned, the Court finds that the parties were bound by its terms and that it meets the definition of "written contract" for purposes of LA. REV. STAT. § 23:1061(A)(3).

Pursuant to Louisiana Civil Code Annotated article 1927, "[a] contract is formed by the consent of the parties established through offer and acceptance." "[O]ffer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative

of consent." *Id.* Moreover, "[w]hen an offeror invites an offeree to accept by performance and, according to usage or the nature or the terms of the contract, it is contemplated that the performance will be completed if commenced, a contract is formed when the offeree begins the requested performance." *Id.; see also Trahan v. Scott Equip. Co., L.L.C.*, 493 Fed. App'x 571, 574 (5th Cir. 2012) (finding a valid contract where "[a buyer] issued a service request to [the seller]; the seller complied and completed the requested service in exchange for [money], which [buyer] paid," although both parties did not sign the instrument).

Under these principles, the undisputed facts in the record clearly establish the existence of a written contract which was accepted by performance. GPI entered into an agreement with ML Smith for the performance of demolition and rebuilding of an essential piece of equipment at GPI's factory. This agreement was negotiated and a Purchase Order issued which contained certain terms, including the provision for "acceptance by performance of any part." [Doc. No. 17-2, Exh. A]. ML Smith began the requested performance before Morris's alleged accident; thus, ML Smith accepted GPI's offer and terms through performance.[2] While the Purchase Order was indeed unsigned, as argued by Morris, it was a written contract accepted by ML Smith by performance, and, thus, the contract, including its terms, is binding.

### 2. Relationship of ML Smith's Services to GPI's Ability to Produce Paper

The Court also finds that GPI presented sufficient evidence to warrant judgment as a matter of law that, at the time of the accident, Morris was performing work that was "an integral part of

---

[2] Additionally, as GPI points out in its reply, the Purchase Order provided that its terms could be accepted by acknowledgement. Once performance was complete, ML Smith acknowledged the terms by invoicing GPI for the work and specifically referring to the Purchase Order by number. *See* [Doc. No. 17-2, Gross Aff., ¶ 6 & Exh. B].

8

or essential to the ability of [GPI] to generate [its] goods, products, and services." LA. REV. STAT. § 23:1061(A)(3).

GPI produced an affidavit from Kenneth Robert Meissner ("Meissner"), Manufacturing Manager for GPI, in which he precisely explains the necessity of the black liquor recovery process to GPI's ability to produce paperboard products. He avers that the black liquor reclaim tanks . . . are an integral part of and essential to GPI's ability to produce its paperboard products from both a continuous process perspective, as well as from an economic and environmental perspective." [Doc. No. 17-3, ¶ 6]. He further avers that, without "black liquor reclaim tanks to store and allow the continuous processing of the black liquor through the evaporators and recovery boiler, GPI would not be able to produce its paperboard products needed for its customers." *Id*. at ¶ 7.

Morris responds that, even if the Purchase Order is a binding written contract, such a contract only creates a rebuttable presumption of a statutory employment relationship between GPI and ML Smith's employees. Morris admits that, if there is a written contract, GPI has shifted the burden to him "to show the work he was performing was not an integral part of or essential to GPI." *Id.* at p. 6. He contends that "he has done so, and the issue is very much one of fact which must be determined on a case-by-case basis." *Id.* According to Morris, GPI has not shown that the construction of the reclaim tank "was a 'substantial, essential, and recurring part' of its business," *Id.*, and summary judgment should be denied.

In reply, GPI argues that Morris improperly cites the Court to cases which do not address statutory employment, but involve independent contractors and address whether they should be treated as "employees" for purposes of workers' compensation benefits. GPI argues further that construction, including new construction, has been recognized by the jurisprudence as integral and

essential to the principal. Moreover, GPI argues that Morris has not presented any facts to rebut GPI's evidence.

The Court finds that GPI has met its burden, and there is a rebuttable presumption of statutory employment. GPI has further properly supported its Motion for Summary Judgment with admissible evidence through the Meissner affidavit showing how and why the black liquor reclaim tanks are an integral part of and essential to GPI's ability to produce its paperboard products. The demolition and rebuild of such tanks is thus also an integral part of and essential to GPI's ability to produce paperboard products. Further, Morris says that he "can" successfully challenge this evidence, but the time for him to do so was in the opposition to GPI's Motion for Summary Judgment, and he has failed in that regard. GPI is entitled to summary judgment on Morris' claims.

### C. Morris' Pending Motion for Partial Summary Judgment

On the same day he filed an opposition to GPI's Motion for Summary Judgment, Morris also filed a Motion for Partial Summary Judgment [Doc. No. 21]. Morris argues, as he did in the opposition to GPI's Motion for Summary Judgment, that the unsigned Purchase Order was not a written contract. He contends that he is entitled to partial summary judgment "decreeing that GPI is not, was not, nor ever was, his 'statutory employer.'" [Doc. No. 21, p. 3]. As the parties have fully briefed this issue and the Court has analyzed that argument and ruled in favor of GPI, the Court finds no further briefing is necessary, and Morris' motion is DENIED.

### III. CONCLUSION

Based on the foregoing, GPI's Motion for Summary Judgment [Doc. No. 13] is GRANTED, and Morris's claims against GPI are DISMISSED WITH PREJUDICE. Zurich's derivative claims are also DISMISSED WITH PREJUDICE.

Morris' Motion for Partial Summary Judgment [Doc. No. 21] is DENIED.

MONROE, LOUISIANA, this 17th day of October, 2019.

                                            TERRY A. DOUGHTY
                                      UNITED STATES DISTRICT JUDGE